# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59394-7-II |
| Respondent, | |
| v. | |
| MATTHEW MICHAEL HELENIAK, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J.—Mathew Heleniak appeals his sentence for second degree assault (domestic violence). Heleniak argues that the State's sentencing memoranda and oral statement at sentencing breached the plea agreement by undermining the State's promise to recommend a 30-month exceptional sentence and 18 months of community custody. Additionally, Heleniak argues that the trial court abused its discretion by imposing a 120-month sentence, the statutory maximum. He contends that the sentence is clearly excessive because it is six times greater than the high end of the standard range.

We affirm.

## FACTS

The State charged Heleniak with second degree assault (domestic violence) and violation of a domestic violence protection order. This appeal concerns the assault offense.

The State alleged that Heleniak assaulted an intimate partner with a deadly weapon, a knife, and by strangulation or suffocation. The victim was pregnant at the time of the assault.

In a plea agreement with the State, Heleniak pleaded guilty to second degree assault (domestic violence) and violation of a domestic violence protection order. He admitted to two aggravating circumstances for the assault offense: that his conduct constituted a pattern of abuse and was deliberately cruel. Heleniak also admitted to four prior domestic violence convictions and two pending domestic violence offenses, one of which involved the same victim as the current case. The State agreed not to charge Heleniak with witness tampering or the deadly weapon enhancement, pregnant victim aggravator, or particularly vulnerable victim aggravator for the assault offense. The parties agreed that Heleniak's offender score was 4 and the standard range was 15-20 months. However, the parties disagreed on a recommended sentence for confinement. The plea agreement stated that the State would recommend an exceptional sentence of 30 months with 18 months of community custody and Heleniak would recommend a standard range sentence of 15 months with 18 months of community custody. In the plea agreement, Heleniak stipulated that "the State may request an exceptional sentence above the standard range of 30 months and is pleading guilty to an aggravator *giving the court the discretion to impose a sentence above that standard range*." Clerk's Papers (CP) at 13 (emphasis altered).

The State submitted a sentencing memorandum and a reply memorandum. The State's sentencing memorandum reiterated multiple times its request that the trial court impose an exceptional sentence of 30 months followed by 18 months of community custody. In this memorandum, the State asserted that the "crime was brutal" and Heleniak

knew the victim was pregnant when he assaulted her with a knife. *Id.* at 74 (emphasis omitted). The State also cited research articles to argue "domestic violence strangulation is a precursor to homicide." *Id.* at 71 (boldface omitted). Although the State agreed not to charge Heleniak with witness tampering, it mentioned this behavior and argued that the trial court "must consider the full pattern of abuse and how it aggravated the charged conduct." *Id.* at 68. But the State explained that the trial court "should not and may not punish the defendant for committing the uncharged crime of witness tampering." *Id.* Later, in its reply memorandum, the State explained that domestic violence perpetrators use tactics "similar to the tactics used by terrorists." *Id.* at 81.

At the sentencing hearing, the prosecutor stated once that "*at least* 30 months, that's our recommendation, is the appropriate sentence in this point." Verbatim Rep. of Proc. (VRP) (Mar. 25, 2024) at 19 (emphasis added). Heleniak did not object to this statement at the time. The prosecutor did not mention its suggested sentence of 30 months of confinement and 18 months of community custody at any other point during the sentencing hearing. Additionally, Heleniak did not object to the prosecutor's mention of information drawn from the police report regarding the assault offense or the research articles linking domestic violence, homicide, and terrorism cited in the prosecutor's memoranda.

The trial court did not follow either Heleniak's or the State's sentencing recommendations. Instead, the trial court imposed 120 months of confinement for the assault offense, which is the statutory maximum. It did not impose community custody. In its findings of fact and conclusions of law for an exceptional sentence, the trial court found that Heleniak's conduct manifested deliberate cruelty towards the victim and was part of

3

an ongoing pattern of abuse. The trial court based its findings on Heleniak's plea to these two aggravating circumstances along with information drawn from the police report. The trial court emphasized that it did "not consider [ ] evidence or impose an exceptional sentence to punish the defendant for the uncharged crime of witness tampering." CP at 45 (emphasis omitted). Heleniak appeals.

## DISCUSSION

### I. BREACH OF THE PLEA AGREEMENT

A. Legal Principles

We review de novo whether the State breached the plea agreement. *State v. Molnar*, 198 Wn.2d 500, 513, 497 P.3d 858 (2021). A court "must 'review [the] prosecutor's actions and comments objectively from the sentencing record as a whole.' " *State v. Ramos*, 187 Wn.2d 420, 433, 387 P.3d 650 (2017) (alteration in original) (quoting *State v. Carreno-Maldonado*, 135 Wn. App. 77, 83, 143 P.3d 343 (2006)). Additionally, we focus "on the effect of the State's actions, not the intent behind them." *State v. Sledge*, 133 Wn.2d 828, 843 n.7, 947 P.2d 1199 (1997).

It is well established that "[a] plea agreement is a contract between the State and the defendant." *State v. MacDonald*, 183 Wn.2d 1, 8, 346 P.3d 748 (2015). A breach occurs when the State "undercut[s] the terms of the agreement explicitly or by conduct evidencing an intent to circumvent the terms of the plea agreement." *Sledge*, 133 Wn.2d at 840. Although the prosecutor need not act enthusiastically, they must "act in good faith, participate in the sentencing proceedings, answer the court's questions candidly in accordance with [the duty of candor toward the tribunal] and, consistent with RCW 9.94A.460, not hold back relevant information regarding the plea agreement." *State v. Talley*, 134 Wn.2d 176, 183, 949 P.2d 358 (1998).

When both parties bargained for a disputed sentence, the prosecutor is entitled to advocate for their own sentencing recommendation. *Molnar*, 198 Wn.2d at 517. For example, " 'sometimes it is necessary for the State to point out potentially aggravating facts, even when bound to recommend a standard-range sentence.' " *Id.* at 519 (finding no breach of plea where summary of original charges provided needed context for the parties' competing sentencing recommendations) (emphasis omitted) (quoting the record). However, the prosecutor may not exceed what is necessary to support their recommendation. *Carreno-Maldonado*, 135 Wn. App. 84-85 (finding breach of plea where the prosecutor discussed potentially aggravating facts that were unnecessary to support their low-end and mid-point sentencing recommendations).

B. Application

As an initial matter, we note that if Heleniak believed the State's sentencing memoranda and oral statement at sentencing undermined the plea agreement, he should have objected at that time. This claim is raised for the first time on appeal, and Heleniak should have explained in his opening brief why review of this unpreserved claim is warranted. However, because the State adequately addressed the substance of Heleniak's claim, we exercise our discretion under RAP 2.5(a)(3) to review the claim without further discussion of this rule.

1. The State's Sentencing Memoranda

Heleniak's first argument is that the State undermined the plea agreement by mentioning the victim's pregnancy, his use of a knife, the uncharged crime of witness tampering, the brutality of the assault, and research articles discussing the link between domestic violence, homicide, and terrorism in its sentencing memoranda. As it relates to the victim's pregnancy and Heleniak's use of a knife, he complains that these facts should not have been mentioned because the State did not

allege an aggravator related to the pregnancy, nor did the State charge him either with the alternative means of committing assault with a deadly weapon or with a deadly weapon enhancement. Br. of Appellant at 10.

We disagree that the prosecutor undermined the plea agreement. The prosecutor provided these facts as necessary context related to the pattern of abuse and deliberate cruelty aggravating factors that Heleniak pleaded to. The prosecutor did not demonstrate an implied intent to circumvent the plea agreement. *See, e.g.*, *Molnar*, 198 Wn.2d at 516. Moreover, Heleniak cites no authority for the proposition that a trial court may not consider facts relevant to one aggravator that may potentially support another uncharged aggravator. Where, as here, "no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Heleniak next contends the State undermined the plea agreement by mentioning conduct related to the uncharged crime of witness tampering. In its initial sentencing memorandum, the State explained that the trial court "should not and may not punish the defendant for committing the uncharged crime of witness tampering" but "must consider the full pattern of abuse and how it aggravated the charged conduct." CP at 68. The trial court emphasized that it did "not consider this evidence or impose an exceptional sentence to punish the defendant for the uncharged crime of witness tampering." *Id.* at 45. Neither the State nor the trial court suggested the facts potentially establishing the uncharged crime of witness tampering could be used to go outside the standard range for the assault offense in violation of RCW 9.94A.530(3). Here again, these remarks were made in an effort to outline the two aggravating circumstances Heleniak pleaded to.

Finally, Heleniak contends the State undermined the plea agreement by highlighting the assault's brutality and calling the court's attention to research articles discussing the link between domestic violence, homicide, and terrorism. We note again that Heleniak did not object to the State's reference to these research articles at the sentencing hearing. On appeal, he argues more generally that "the content and tone of the [State's] sentencing memorandums" implied that a sentence longer than 30 months was warranted. Br. of Appellant at 17. But the plea agreement in this case involved a *disputed sentence*, not an agreed recommendation, and the State was entitled to advocate for its own sentencing recommendation. *Molnar*, 198 Wn.2d at 516. In *Molnar*, the court rejected the defendant's argument that the State's use of words such as " 'egregious' " to describe the offense undermined its promise to recommend a midrange standard sentence. *Id.* at 517. Likewise, here, the State's use of the word "brutal" and its references to research articles to support its recommendation of an exceptional sentence did not breach the plea agreement.

### 2. The Prosecutor's Oral Statement at Sentencing

Heleniak argues that the prosecutor breached the plea agreement and undermined its promise to recommend 30 months of confinement by stating "*at least* 30 months, that's our recommendation." VRP at 19 (emphasis added). Heleniak contends this qualification, coupled with the prosecutor's failure to mention, in its oral remarks, the recommended domestic violence and substance abuse community custody treatment conditions, constitutes a breach of the agreement. In support, Heleniak cites *State v. Williams*, 103 Wn. App. 231, 11 P.3d 878 (2000). In *Williams*, we held that the State breached the plea agreement, which required the State to recommend a sentence at the high end of the standard range, when it outlined eight aggravating

factors justifying an exceptional sentence and qualified several oral statements during the sentencing hearing with "at least" and "at a minimum." *Id.* at 237-38, 239.

This case is readily distinguishable from *Williams*. In *Williams*, the State was bound to recommend a *standard range* sentence, not an exceptional sentence as in this case. *Id.* at 233. Nevertheless, the prosecutor in *Williams* outlined in its sentencing memorandum numerous aggravating factors that would support an exceptional sentence, and informed the court:

> "The Court has authority, due to these factors and the other listed, to impose an exceptional sentence upwards beyond 12 months. The State is not asking for that, however, instead recommending the high-end of the range (12 months). That is the MOST leniency that should be afforded the defendant. At best, the arguments that the defense will make in favor of a lower sentence should only serve to sway the Court from an exceptional sentence upward."

*Id.* at 237 (quoting the record).

In contrast, the prosecutor in this case used the qualifying phrase "at least" only once during the sentencing hearing rather than repeatedly like in *Williams*. Although we disapprove of the prosecutor's use of the phrase "at least" in its recommendation, "in a breach-of-plea case, the State's words must always be considered in context." *Molnar*, 198 Wn.2d at 517. The context here is that the State reiterated on numerous occasions throughout its initial sentencing memorandum that a 30-month sentence with 18 months of community custody was appropriate. Given that the dispute between the parties centered on the term of confinement, the prosecutor's failure to mention the agreed recommendation for domestic violence and substance abuse treatment during the sentencing hearing was of little moment, particularly where the prosecutor clearly stated the treatment recommendation in its initial sentencing memorandum. Overall, reviewing the prosecutor's comments objectively from the sentencing record as a whole, their effect, if any, was de minimis and did not circumvent the terms of the plea agreement.

## II. Excessive Sentence

Heleniak argues that the trial court's 120-month sentence is clearly excessive because it is six times greater than the high end of the standard range, which is 20 months. The State counters that the trial court did not abuse its discretion given Heleniak's "cruelty and extreme violence" and history of domestic violence abuse. Br. of Resp't at 23. We agree with the State.

A. Legal Principles

We review the length of the sentence imposed by the court for abuse of discretion. *State v. Law*, 154 Wn.2d 85, 93, 110 P.3d 717 (2005). We have "considerable latitude" when assessing whether a sentence is clearly excessive. *State v. Halsey*, 140 Wn. App. 313, 325, 165 P.3d 409 (2007). A sentence is clearly excessive if it is based on "an impermissible reason or unsupported facts," or if it is "so long that, in light of the record, it shocks the conscience of the reviewing court." *Id.* at 324. A sentence shocks the conscience if no reasonable person would have adopted the position taken by the trial court. *Id.* at 324-325. Heleniak does not argue that the sentence was based on untenable grounds or untenable reasons. Instead, he focuses solely on whether the length of the sentence shocks the conscience.

B. Application

Here, Heleniak was sentenced to 120 months in confinement with no community custody. The standard range for the assault offense was 15-20 months. Heleniak contends this sentence is clearly excessive because it is six times greater than the high end of the standard range. However, this fact alone does not render the sentence presumptively invalid. *See, e.g.*, *State v. Ritchie*, 126 Wn.2d 388, 404, 894 P.2d 1308 (1995) (upholding an 84-month sentence for second degree assault despite it being nine times greater than the high end of the standard range). In the plea agreement,

Heleniak admitted to two aggravating circumstances: that his conduct constituted a pattern of abuse and was deliberately cruel. He also stipulated that "the State may request an exceptional sentence above the standard range." CP at 13. Given that the trial court has " 'all but unbridled discretion in setting the length of the sentence,' " we conclude that the trial court's exceptional sentence does not shock the conscience, especially in light of the violent nature of this case and Heleniak's extensive history of domestic violence offenses. *Halsey*, 140 Wn. App. at 325 (quoting *State v. Creekmore*, 55 Wn. App. 852, 864, 783 P.2d 1068 (1989), *abrogation on other grounds recognized by State v. Ramos*, 124 Wn. App. 334, 101 P.3d 872 (2004)).

CONCLUSION

The prosecutor did not undermine the plea agreement and the trial court did not abuse its discretion in sentencing Heleniak. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
CRUSER, C.J.

We concur:

_____
GLASGOW, J.

_____
VELJACIC, J.

10